# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| MCDONALD'S CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **C.A. No. 2020-0658-JRS** |
| | ) | |
| STEPHEN J. EASTERBROOK, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

Date Submitted: November 13, 2020
Date Decided: February 2, 2021

Garrett B. Moritz, Esquire, S. Reiko Rogozen, Esquire and Holly E. Newell, Esquire of Ross Aronstam & Moritz LLP, Wilmington, Delaware; William Savitt, Esquire, Anitha Reddy, Esquire and Sarah K. Eddy, Esquire of Wachtell, Lipton, Rosen & Katz, New York, New York; Ronald L. Olson, Esquire, John W. Spiegel, Esquire and Luis Li, Esquire of Munger, Tolles & Olson LLP, Los Angeles, California; and Jonathan I. Kravis, Esquire of Munger, Tolles & Olson LLP, Washington, DC, Attorneys for Plaintiff McDonald's Corporation.

Daniel C. Herr, Esquire of Law Office of Daniel C. Herr, LLC, Wilmington, Delaware and Kristen E. Hudson, Esquire of The Benson Firm PLLC, Austin, Texas, Attorneys for Defendant Stephen J. Easterbrook.

**SLIGHTS, Vice Chancellor**

McDonald's Corporation ("McDonald's" or the "Company") brings this action against its former chief executive officer, Stephen J. Easterbrook, for damages or rescission of a Separation Agreement (defined below) on grounds of fraudulent inducement and breach of fiduciary duty. The parties entered into the Separation Agreement after McDonald's discovered Easterbrook had engaged in a sexual relationship with a subordinate. While McDonald's initially considered terminating Easterbrook for "cause," it ultimately decided that a voluntary separation was best for the Company and thereafter negotiated with Easterbrook regarding the terms of his termination "without cause." The product of that negotiation, the Separation Agreement, provided Easterbrook with substantial severance compensation in exchange for his leaving the Company voluntarily with a full release of claims against the Company.

After his separation, McDonald's discovered Easterbrook had engaged in several other inappropriate work-place relationships with subordinates notwithstanding his representation that the relationship that prompted his termination was an isolated transgression. McDonald's also learned that Easterbrook had orchestrated a substantial grant of equity to one of the employees with whom he was having a sexual relationship in clear violation of Company policy. This litigation followed.

1

The McDonald's Verified Complaint ("Complaint") comprises two counts. In Count I, McDonald's alleges Easterbrook breached his fiduciary duties as an officer and director when he violated the Company's Standards of Business Conduct by pursuing sexual relations with Company employees and by making decisions about compensation for an employee with whom he was in a sexual relationship to further his own interests. In Count II, McDonald's alleges Easterbrook fraudulently induced the Company to enter into the Separation Agreement by telling "deliberate falsehoods" in order to conceal the extent of his wrongdoing.

Easterbrook has moved to dismiss the Complaint on two grounds. First, he invokes Chancery Rule 12(b)(3) to argue this Court is an improper venue to adjudicate these claims since the parties agreed in a variety of equity agreements that disputes relating to Easterbrook's compensation, including severance compensation, would be litigated in the courts of Illinois. Second, he invokes Chancery Rule 12(b)(6) to argue the Complaint fails to state viable claims because: (1) the claims are barred by the Separation Agreement's anti-reliance clause, and (2) the Company cannot well-plead justifiable reliance or causation given its admissions regarding the limited scope of its investigation leading up to its decision to enter into the Separation Agreement.

After carefully considering Easterbrook's arguments, I am satisfied his Motion to Dismiss must be denied. The mandatory forum selection clauses he seeks

to invoke were not incorporated in the Separation Agreement, and there is no other basis to imply a restriction on McDonald's presumptive right to choose its forum. As for Easterbrook's Rule 12(b)(6) arguments, the integration clause in the Separation Agreement is not so broad that it would deny McDonald's the right to hold its former CEO and member of its board of directors accountable for breach of fiduciary duty and fraud on the Company. And the Company has pled a reasonably conceivable basis upon which the Court, as fact-finder, could conclude that McDonald's reasonably relied upon Easterbrook's alleged "falsehoods" in a manner that caused it harm. My reasons follow.

## I. BACKGROUND

I have drawn the facts from well-pled allegations in the Complaint and documents incorporated by reference or integral to that pleading.[1] For purposes of the motion, I accept as true the Complaint's well-pled factual allegations and draw all reasonable inferences in Plaintiff's favor.[2]

---

[1] Verified Compl. ("Compl.") (D.I. 1); *Wal-Mart Stores, Inc. v. AIG Life Ins. Co.*, 860 A.2d 312, 320 (Del. 2004) (noting that on a motion to dismiss the Court may consider documents that are "incorporated by reference" or "integral" to the complaint).

[2] *Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 896–97 (Del. 2002).

## A. Parties

Plaintiff, McDonald's, a Delaware corporation, is one of the largest restaurant companies in the world, maintaining restaurants in over 100 countries.[3] Defendant, Stephen J. Easterbrook, is a citizen of the United Kingdom who served as president, CEO and board member of McDonald's from March 1, 2015 until his termination on November 1, 2019.[4]

## B. The Initial Allegations of Wrongdoing

On October 16, 2019, McDonald's was alerted to an allegation that Easterbrook was engaged in an inappropriate relationship with a McDonald's employee ("Employee-1").[5] The independent members of the McDonald's board of directors ("Board") convened and instructed independent outside counsel to investigate.[6] Employee-1 advised outside counsel that her relationship with Easterbrook was consensual, non-physical and involved mainly provocative text messages and video calls on her and Easterbrook's cell phones.[7] Easterbrook

---

[3] Compl. ¶¶ 1, 9.

[4] Compl. ¶ 10.

[5] Compl. ¶ 19.

[6] *Id.*

[7] Compl. ¶¶ 20, 25.

confirmed Employee-1's statement during an interview with outside counsel.[8] Importantly, during this interview, Easterbrook affirmatively denied that he had ever engaged in a sexual relationship, physical or non-physical, with any other McDonald's employee.[9] As part of this investigation, independent counsel searched Easterbrook's cell phone and found no evidence to contradict Easterbrook's representations or version of events.[10]

## C. The Separation Agreement

On October 26, 2019, the Board decided to terminate Easterbrook based on his deliberate violation of the Company's Standards of Business Conduct.[11] In deliberating whether the termination should be for cause, the Board flagged concerns that Easterbrook would challenge the termination in lengthy, costly and public litigation.[12] And the likely outcome of that litigation was difficult to predict given that, in order to prove "cause," the Company would have to prove that Easterbrook's conduct constituted "dishonesty, fraud, illegality or moral

---

[8] Compl. ¶ 20.

[9] Compl. ¶ 21.

[10] Compl. ¶ 22.

[11] Compl. ¶ 23.

[12] Compl. ¶ 24. A termination for cause "would deprive [Easterbrook] of all his severance benefits." *Id.*

turpitude."[13]  With these concerns in mind, the Board determined it best to pursue a negotiated termination of Easterbrook without cause.[14]

After lengthy negotiations, the parties entered into a Separation Agreement whereby Easterbrook would voluntarily separate from McDonald's on agreed-upon terms.  Relevant here, the Separation Agreement: (1) provided that Easterbrook would release any and all claims he had against the Company;[15] (2) did not require the Company to release any claims against Easterbrook;[16] (3) required Easterbrook to write a letter of apology to McDonald's employees;[17] (4) specified that Easterbrook's termination was without cause, thereby requiring McDonald's to compensate Easterbrook in accordance with the Company's Severance Plan;[18] (5) incorporated certain provisions of agreements governing Easterbrook's 2018 and 2019 equity and option awards ("Equity Agreements");[19] and (6) contained a

---

[13] Compl. ¶¶ 24, 25, 29.

[14] Compl. ¶ 26.

[15] Compl. ¶ 27; Opening Br. in Supp. of Def. Stephen J. Easterbrook's Mot. to Dismiss the Verified Compl. ("OB") (D.I. 4), Ex. 1 ("Separation Agreement"), at 4–5.

[16] Compl. ¶ 27.

[17] *Id.*

[18] Compl. ¶ 29; Separation Agreement at 1–2.

[19] Compl. ¶¶ 28, 30; Separation Agreement at 2; OB, Ex. 2 ("Equity Agreement").  Each of the Equity Agreements contained a forum selection clause designating the state or federal courts of Illinois as the exclusive fora for disputes "aris[ing] directly or indirectly from the relationship of the parties evidenced by the Options or this Agreement"

standard integration clause, stating in relevant part: "This Agreement contains the full agreement between [Easterbrook] and McDonald's and completely supersedes any prior written or oral agreements or representations concerning the subject matter thereof."[20]  The Separation Agreement became effective November 1, 2019, which was the official date of Easterbrook's termination from all positions at the Company.[21]

## D. New Allegations of Misconduct Surface

In July 2020, more than eight months after Easterbrook was terminated, McDonald's received an anonymous tip indicating that another employee ("Employee-2") had engaged in a sexual relationship with Easterbrook while Easterbrook was CEO.[22]  During the course of its investigation of this allegation, the Board discovered incriminating photographic and other evidence revealing Easterbrook had engaged in inappropriate relationships with two other McDonald's

___

(the "Forum Selection Clause"). Equity Agreement at § 5.  It appears there are four Equity Agreements, only one of which has been provided to the Court in the course of briefing this motion.  The parties seem to agree that these four agreements each include a forum selection clause functionally identical in form.  Accordingly, I assume that the Forum Selection Clause provided at Exhibit 2 to the opening brief is the same in each of the Equity Agreements.

[20] Separation Agreement at 13.

[21] Compl. ¶ 27; Separation Agreement at 1.

[22] Compl. ¶ 35.

employees.[23]  The photographs were found on Company servers, attached to an e-mail Easterbrook sent from his work e-mail account to his personal e-mail account.[24]  This was the first time the Board had seen photographic evidence of Easterbrook's misconduct, as the photos were not on Easterbrook's phone when it was inspected during the pre-termination investigation.[25]  The Board also discovered that Easterbrook had approved and facilitated a special discretionary grant of restricted stock units to Employee-2 while the two were intimately involved.[26]

According to McDonald's, its Board would not have agreed to the terms of the Separation Agreement had Easterbrook not covered up the full extent of his indiscretions with lies and deceit.[27]  Indeed, the post-termination revelations would have constituted "a clear legal basis to terminate Easterbrook for cause" and would have left Easterbrook little choice but to accept his termination and leave the Company without severance compensation.[28]

---

[23] Compl. ¶ 36.

[24] *Id.*

[25] Compl. ¶ 39.

[26] Compl. ¶ 38.

[27] Compl. ¶ 40.

[28] Compl. ¶¶ 40–41.

### E. Procedural Posture

On August 10, 2020, McDonald's filed its Complaint against Easterbrook alleging (1) breach of fiduciary duty and (2) fraud in the inducement. Easterbrook brought his Motion to Dismiss under Chancery Rules 12(b)(3) and 12(b)(6) on August 14, 2020. The Motion was submitted for decision on November 13, 2020.

## II. ANALYSIS

As noted, Easterbrook moves to dismiss on two separate grounds, under Chancery Rule 12(b)(3) for improper venue and Chancery Rule 12(b)(6) for failure to state viable claims. I address each ground in turn.

### A. McDonald's Has Sued in a Proper Forum

"The proper procedural rubric for addressing a motion to dismiss based on a forum selection clause is found under Rule 12(b)(3), improper venue."[29] "Although Delaware courts have, in the past, framed a forum selection clause analysis as jurisdictional in some sense, recent cases have all proceeded under Rule 12(b)(3)."[30] When addressing a motion under Rule 12(b)(3), "the court is not shackled to the

---

[29] *In re Bay Hills Emerging P'rs I, L.P.*, 2018 WL 3217650, at *4 (Del. Ch. July 2, 2018) (quoting *Bonanno v. VTB Hldgs., Inc.*, 2016 WL 614412, at *5 (Del. Ch. Feb. 8, 2016)).

[30] *Id.*

9

plaintiff's complaint and is permitted to consider extrinsic evidence from the outset."[31]

Section 5 of the Equity Agreements contains a mandatory but limited forum selection provision. In relevant part, it reads:

> For purposes of litigating any dispute that arises directly or indirectly from the relationship of the parties evidenced by the Options or this Agreement, the parties hereby submit to and consent to the exclusive jurisdiction of the State of Illinois, agree that such litigation shall be conducted in the courts of DuPage County, Illinois, or the federal courts for the United States for the Northern District of Illinois, where this grant is made and/or to be performed.[32]

Easterbrook invokes this Forum Selection Clause as the basis for his dismissal bid under Chancery Rule 12(b)(3). For reasons explained below, the bid falls short.[33]

"It is, of course, axiomatic that a contract may incorporate by reference provisions contained in some other instrument."[34] But our courts will recognize incorporation by reference only to the extent the parties expressed an "explicit

---

[31] *Id.* (quoting *Troy Corp. v. Schoon*, 2007 WL 949441, at *2 (Del. Ch. Mar. 26, 2007) (internal quotations omitted)).

[32] Equity Agreement at § 5.

[33] I pause here to address briefly McDonald's argument that its Delaware forum selection bylaw controls Easterbrook's forum motion. I disagree. The forum selection bylaw, at Section 13 of the McDonald's Amended and Restated Bylaws, dictates forum selection in certain instances "[u]nless the Corporation consents in writing to the selection of an alternative forum . . . ." Thus, if the Forum Selection Clause were to apply to McDonald's claims as alleged here (it does not), then the plain language of the forum selection bylaw would hold McDonald's to that promise.

[34] *State v. Black*, 83 A.2d 678, 681 (Del. Super. 1951).

manifestation of intent" to incorporate one document into another.[35] And, "when incorporated matter is referred to for a specific purpose only, it becomes a part of the contract for that purpose only, and should be treated as irrelevant for all other purposes."[36]

Easterbrook has failed to demonstrate an intent of both parties, as expressed in the Separation Agreement, to incorporate the Equity Agreements' Forum Selection Clause into the Separation Agreement. In fact, the clear terms of the Separation Agreement reflect the opposite intent. The parties were deliberate in

---

[35] *Wolfson v. Supermarkets Gen. Hldgs. Corp.*, 2001 WL 85679, at *5 (Del. Ch. Jan. 23, 2001); *see also* 17A Am. Jur. 2d Contracts § 381 (2018) ("In order for an instrument to be incorporated into and become part of a contract, the instrument must actually be incorporated; it is not enough for the contract to merely mention the instrument, and the referring language in the contract must demonstrate the parties intended to incorporate all or part of the referenced instrument. Additionally, a reference in a contract to another instrument will incorporate the other instrument only to the extent indicated and for the specific purpose indicated.").

[36] *Town of Cheswold v. Cent. Del. Bus. Park*, 188 A.3d 810, 819 (Del. 2018); *see also Guerini Stone Co. v. P.J. Carlin Constr. Co.*, 240 U.S. 264, 277, (1916) ("[A] reference by the contracting parties to an extraneous writing for a particular purpose makes it a part of their agreement only for the purpose specified."); *Pauley Petroleum, Inc. v. Cont'l Oil Co.*, 231 A.2d 450, 457 (Del. Ch. 1967) ("[O]ne of the well settled exceptions to this rule (of incorporation) is this: . . . an agreement will not be deemed to incorporate matter in some other instrument or writing except to the extent that the same is specifically set forth or identified by reference." (quoting *Black*, 83 A.2d at 681)); *Exelon Generation Acqs., LLC v. Deere & Co.*, 176 A.3d 1262, 1272 (Del. 2017) ("And to the extent the Superior Court believed that the incorporation of a discrete term or two from another contract necessarily means that the entire contract has been incorporated, we disagree.").

identifying the discreet provisions of the Equity Agreements they wished to incorporate within the Separation Agreement, including:

1. "Each stock option and performance-based restricted stock unit ('RSU') award held by you on your Termination Date shall be treated in accordance with the terms of the McDonald's Corporation 2012 Omnibus Stock Ownership Plan and the applicable stock option or RSU award agreement governing your awards (collectively, the 'Grant Materials')";[37]

2. "Without limiting the generality of the foregoing, the parties agree that your termination of employment on your Termination Date shall be considered a termination of employment by McDonald's without 'Cause' within the meaning set forth in the applicable Grant Materials";[38]

3. "For the avoidance of doubt, your termination of employment shall not be considered a 'Termination with At Least 68 Years of Combined Age and Service' within the meaning set forth in the applicable Grant Materials";[39] and

4. "For more detailed information on the treatment of your stock options and RSUs upon your Termination Date, please refer to the sections of the applicable Grant Materials."[40]

Each of these provisions within the Separation Agreement refers to a specific subsection of the Equity Agreements. If the parties intended to incorporate the Forum Selection Clause, they would have been explicit, just as they were when

---

[37] Separation Agreement at 2.

[38] *Id.*

[39] *Id.*

[40] *Id.*

12

incorporating other provisions of the Equity Agreements.[41]   Without this clear expression of intent, the Court has no cause to rewrite the Separation Agreement to include commitments the parties themselves chose not to incorporate.[42]

Easterbrook's Chancery Rule 12(b)(3) argument rests entirely upon the Forum Selection Clause.  As that clause does not apply to the claims asserted here, the Motion to Dismiss for improper forum must be denied.[43]

---

[41] *See, e.g.*, *Mack v. Rev Worldwide, Inc.*, 2020 WL 7774604, at \*2 (Del. Ch. Dec. 30, 2020) (holding that a forum selection clause in one contract had been expressly incorporated by reference into another when the agreement without the clause provided, "The other provisions of Sections JURISDICTION and WAIVER OF JURY TRIAL of the [corresponding Note] are incorporated herein, *mutatis mutandis*, as if a part hereof." (capitalization in original) (alteration in original)).

[42] In this regard, a parallel can be drawn to the statutory canon, *expresio unius est exclusio alterius*.  This important canon of construction declares that "when provisions are expressly included in one statute but omitted from another, we must conclude that the General Assembly intended to make those omissions." *Leatherbury v. Greenspun*, 939 A.2d 1284, 1291 (Del. 2007).  Similarly, where parties to a contract incorporate certain provisions of one contract into another, but omit other provisions from incorporation, an intent can be inferred that the omissions were deliberate. *Active Asset Recovery, Inc. v. Real Estate Asset Recovery Servs., Inc.,* 1999 WL 743479, at \*11 (Del. Ch. Sept. 10, 1999) (explaining that omission of a term in a contract "speaks volumes" when construing included terms); *cf. Unkelsbee v. Homestead Fire Ins. Co. of Balt.*, 41 A.2d 168, 172 (D.C. 1945) (discussing application of the *expressio unius est exclusio alterius* canon in the contract interpretation context).

[43] Even if the Court ignored the Separation Agreement, and incorporated the Forum Selection Clause by "non-reference," the clause would not, by its terms, dictate that McDonald's non-contract claims be brought in the designated forum.  As written, the clause would not extend to the breach of fiduciary duty or fraud in the inducement claims asserted here. *See Parfi Hldg. AB v. Mirror Image Internet, Inc.*, 817 A.2d 149, 155 (Del. 2002); *ASDC Hldg., LLC v. Richard J. Malouf 2008 All Smiles Grantor Retained Annuity Tr.*, 2011 WL 4552508, at \*4 (Del. Ch. Sept. 14, 2011); *PPF Safeguard, LLC v. BCR Safeguard Hldg., LLC*, 2010 WL 2977392, at \*5 (Del. Ch. July 29, 2010); *OTK Assocs., LLC v. Friedman*, 85 A.3d 696, 720 (Del. Ch. 2014); *Nat'l Indus. Gp. (Hldg.)*

## B. The Separation Agreement's Integration Provision Does Not Contain an Anti-Reliance Clause

The standard for deciding a motion to dismiss under Court of Chancery Rule 12(b)(6) is well-settled:

> all well-pleaded factual allegations are accepted as true; (ii) even vague allegations are "well-pleaded" if they give the opposing party notice of the claim; (iii) the Court must draw all reasonable inferences in favor of the non-moving party; and (iv) dismissal is inappropriate unless the plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances susceptible of proof.[44]

As noted, the parties agreed in the Separation Agreement that, "[t]his Agreement contains the full agreement between [Easterbrook] and McDonald's and completely supersedes any prior written or oral agreements or representations concerning the subject matter thereof."[45] Easterbrook characterizes this language as a classic "anti-reliance clause" that prevents both parties from asserting claims based on extra-contractual promises or statements. I disagree.[46]

---

*v. Carlyle Inv. Mgmt. L.L.C.*, 67 A.3d 373, 384 n.41 (Del. 2013); *Brown v. T-Ink, LLC*, 2007 WL 4302594, at \*15 (Del. Ch. Dec. 4, 2007).

[44] *Savor, Inc.*, 812 at 896–97 (citation omitted).

[45] Separation Agreement at 13.

[46] I note here that the existence (or not) of an anti-reliance clause would have no bearing on the Company's ability to assert a claim that Easterbrook breached his fiduciary duty of candor and good faith, *inter alia*, by hiding and misrepresenting material facts during the Company's investigation of his misconduct. *See In re Del Monte Foods Co. S'holders Litig.*, 25 A.3d 813, 840 (Del. Ch. 2011) ("The traditional deference given to agreements freely negotiated between sophisticated parties is limited by fiduciary principles.").

As a matter of public policy, Delaware is "intolerant of fraud" and, for this reason "the intent to preclude reliance on extra-contractual statements must emerge clearly and unambiguously from the contract."[47] The practical effect of this policy imperative is that "[t]his Court . . . will not give[ ] effect to so-called merger or integration clauses that do not clearly state that the parties disclaim reliance upon extra-contractual statements."[48] In other words, "the anti-reliance language must be explicit and comprehensive, meaning the parties must 'forthrightly affirm that they are not relying upon any representation or statement of fact not contained [in the contract].' A standard integration clause, without more, is insufficient to disclaim all reliance on extra-contractual statements."[49]

McDonald's cites a litany of cases to illustrate that the integration clause here is nearly identical to several this court has found to be lacking clear anti-reliance

---

[47] *Kronenberg v. Katz*, 872 A.2d 568, 593 (Del. Ch. 2004); *see also ABRY P'rs V, L.P. v. F&W Acq., LLC*, 891 A.2d 1032, 1058–59 (Del. Ch. 2006) ("[M]urky integration clauses, or standard integration clauses without explicit anti-reliance representations, will not relieve a party of its oral and extra-contractual fraudulent representations.").

[48] *Anvil Hldg. Corp. v. Iron Acq. Co.*, 2013 WL 2249655, at *8 (Del. Ch. May 17, 2013) (internal quotations omitted).

[49] *Anschutz Corp. v. Brown Robin Capital, LLC*, 2020 WL 3096744, at *13 (Del. Ch. June 11, 2020) (quoting *Kronenberg*, 872 A.2d at 591) (alteration in original); *see also Airborne Health, Inc. v. Squid Soap, LP*, 984 A.2d 126, 140 (Del. Ch. 2009) (holding that "[a]n anti-reliance provision must be explicit, and a standard integration clause is not enough").

language.  In *Kronenberg v. Katz*, for instance, the court found the following language to provide for integration but not anti-reliance:

> This Agreement . . . constitutes the entire agreement and understanding of the parties hereto with respect to the subject matter hereof and supersedes all prior or contemporaneous agreements, understandings, inducements, or conditions, oral or written, express or implied."[50]

The same was true in *Anschutz Corp. v. Brown Robin Capital*, where the parties agreed: "This agreement . . . embod[ies] the entire agreement and understanding of the Parties hereto with respect to the subject matter hereof, and supersede[s] all prior and contemporaneous discussions, agreements and understandings relative to such subject matter . . . ."[51]

In *Anschutz*, as in *Kronenberg*, the court found the agreement lacked anti-reliance language sufficient to dismiss claims for extra-contractual fraud as a matter of law.[52]  At best, the provisions reflected the parties' intent that the agreement they

---

[50] *Kronenberg*, 872 A.2d at 593.  As McDonald's points out, the anti-reliance provisions this court has found to reflect the parties' intent not to rely upon representations outside the contract say precisely that; *see, e.g.*, *Pilot Air Freight, LLC v. Manna Freight Sys., Inc.*, 2020 WL 5588671, *21 (Del. Ch. Sept. 18, 2020) ("And Pilot 'EXPRESSLY WAIVE[D] AND AGREE[D] THAT IT IS NOT RELYING ON, ANY REPRESENTATION OR WARRANTY' (other than those embodied in the APA) whether 'EXPRESS' or 'IMPLIED.'" (capitalization in original)).

[51] *Anschutz Corp.*, 2020 WL 3096744, at *14 n.191.

[52] *Id.* at *14 ("[T]he contract does not actually include a specific acknowledgement by a party that it is only relying on information contained within the four corners of the agreement . . . ."); *see also FdG Logistics LLC v. A&R Logistics Hldgs., Inc.*, 131 A.3d 842, 858 (Del. Ch. 2016) (finding no anti-reliance clause where the language read: "This Agreement, the Transaction Documents and the documents referred to herein and

16

were signing integrated and superseded all prior agreements between the parties. And that is all the integration clause the parties agreed to in the Separation Agreement accomplished.[53]

Easterbrook argues that the unique structure of the Separation Agreement distinguishes it from all the cases cited by McDonald's where Delaware courts held that integration clauses did not reflect an intent to disclaim reliance upon extra-contractual misrepresentations. More specifically, Easterbrook asserts that because

therein contain the entire agreement between the Parties and supersede any prior understandings, agreements or representations . . . which may have related to the subject matter hereof in any way"); *Haney v. Blackhawk Network Hldgs., Inc.*, 2016 WL 769595, at *5 n.39 (Del. Ch. Feb. 26, 2016) (finding only a general integration clause where the agreement read: "This Agreement, the Transaction Documents and the Confidentiality Agreement constitute the sole and entire agreement among the Parties with respect to the subject matter of this Agreement and supersede all prior and contemporaneous understandings, agreements, or representations . . . with respect to such subject matter . . ."); *Heritage Handoff Hldgs., LLC v. Fontanella*, 2019 WL 1056270, at *4 (D. Del. Mar. 6, 2019) (denying dismissal when agreement's only potential language disclaiming reliance read: "This Agreement and the Related Agreements constitute the entire agreement between and among the parties . . . and supersede[s] all other prior agreements and understandings . . . with respect to the collective subject matter hereof and thereof . . .").

[53] The purportedly contrary authority cited by Easterbrook is easily distinguishable. In two of the cases, the courts construed contracts that included both integration clauses and clear anti-reliance clauses. *See Midcap Funding X Tr. v. Grabel*, 2020 WL 2095899, at *19 (Del. Ch. Apr. 30, 2020); *IAC Search, LLC v. Conversant LLC*, 2016 WL 6995363, at *8 (Del. Ch. Nov. 30, 2016). In the third case, the court simply noted that an integration clause can be employed to exclude parol evidence proffered to alter the clear terms of the contract. *See Black Horse Capital, LP v. Xsetlos Hldgs.*, 2014 WL 5025926, at *22 (Del. Ch. Sept. 30, 2014). In doing so, the court readily acknowledged the settled principle that a general integration clause "does not contain sufficient anti-reliance language to bar a claim based on '*material misstatements of fact.*'" *Id.* at *23 (emphasis in original).

the Separation Agreement was structured as a letter addressed to him personally, it somehow distinguishes that contract from the more typical transactional agreements that have prompted our courts to draw the integration clause vs. anti-reliance clause distinction.[54] Here again, I disagree. The form of an agreement will not defuse this court's abhorrence of fraud or alter the public policy that animates this court's insistence that anti-reliance provisions use clear terms to reflect the parties' mutual understanding that neither is relying upon the truth (or not) of the other's extra-contractual promises or statements.[55] Easterbrook's argument to the contrary is difficult to follow and, in any event, not even remotely supported by our law.

Easterbrook next argues that "McDonald's cannot assert a year later that it relied on representations it failed to identify in the Separation Agreement it drafted" and, in this regard, he warns that, "[i]f after-acquired information can be used to rescind these agreements, neither an employer nor an employee will [ever] get any certainty of closure upon a separation."[56] While Easterbrook is correct that McDonald's could have identified extra-contractual statements it relied upon when entering into the Separation Agreement, it certainly was not required to do so.

---

[54] Reply Br. in Supp. of Def. Stephen J. Easterbrook's Mot. to Dismiss the Verified Compl. (D.I. 13) ("RB"), at 16.

[55] *ABRY P'rs*, 891 A.2d at 1058.

[56] RB at 27.

Rather, our law places the burden on Easterbrook to negotiate for anti-reliance language if he wanted later to preclude McDonald's from suing for extra-contractual fraud. "[When] parties fail to include unambiguous anti-reliance language, they will not be able to escape responsibility for their own fraudulent representations made outside of the agreement's four corners."[57] If employees like Easterbrook seek "closure upon a separation" to include protection from claims of extra-contractual fraud, they need only bargain for a clear anti-reliance provision, as defined by our courts in legion authority.[58]

---

[57] *ABRY P'rs*, 891 A.2d at 1059.

[58] Easterbrook also argued during the hearing on the Motion, but not in his briefs, that McDonald's cannot seek rescission of the Separation Agreement because Easterbrook substantially performed the contract. *See McDonald's v. Easterbrook*, C.A. 2020-0658-JRS, at 36–38 (Del. Ch. Nov. 13, 2020) (TRANSCRIPT) (D.I. 28) (citing *FdG Logistics*, 131 A.3d at 858). "It is settled Delaware law that a party waives an argument by not including it in its brief." *Emerald P'rs v. Berlin*, 2003 WL 21003437, at *43 (Del. Ch. Apr. 28, 2003). Beyond waiver, the argument fails on the merits. It is true that the court in *FdG Logistics* determined on the pleadings that a claim for rescission of a merger agreement was not practicable after the merger had already been consummated. *FdG Logistics*, 131 A.3d at 863. But the "feasibility of rescission" analysis undertaken in *FdG Logistics* is not necessary here. Unlike rescission in the merger context, the payment of severance compensation is not an egg so scrambled that rescission of the payments would be infeasible. Moreover, as our Supreme Court has admonished, this court must be careful not to rule out any form of equitable remedy before it has heard the evidence supporting the claim for relief. *Brinckerhoff v. Enbridge Energy Co., Inc.*, 159 A.3d 242, 262 (Del. 2017), *as revised* (Mar. 28, 2017) ("At this stage in the proceedings, Brinckerhoff will not be limited to a specific equitable remedy. Whether an equitable remedy should be ordered will depend on the Vice Chancellor's assessment of the equities, which include the practicality of an equitable remedy given the passage of time, and the ability to order equitable relief tailored to the harm caused by a breach of the LPA."). Finally, even if substantial performance were sufficient to deny rescission as a matter of law at this stage of the proceedings, it is unclear that Easterbrook has in fact substantially performed. Simply because Easterbrook maintains he has complied with many of the

19

The claims stated in the Complaint are fundamentally based on Easterbrook's alleged material extra-contractual falsehoods that, according to McDonald's, induced the Company to agree to a without cause termination and ultimately to enter into the Separation Agreement. According to the Complaint, "[t]he Board would not have agreed to the terms of the Separation Agreement had it then been aware of Easterbrook's physical sexual relationships with three McDonald's employees . . . and the falsity of his representation to outside counsel that he had never engaged in a physical sexual relationship with a Company employee."[59] The Separation Agreement's general integration clause did not disclaim McDonald's reliance upon these extra-contractual assurances.

## C. The Complaint Well-Pleads Justifiable Reliance and Causation

Whether McDonald's justifiably relied on Easterbrook's representations regarding the extent of his inappropriate sexual relationships with subordinates and whether Easterbrook's disclosure of such relationships would have caused McDonald's not to enter into the Separation Agreement are issues of fact not appropriate for disposition on the pleadings. As to reliance, "the reasonableness of a plaintiff's reliance is a factual inquiry that is typically resolved with the benefit of

---

restrictive terms of the Separation Agreement since its execution does not establish, on the pleadings and as a matter of law, that he substantially performed his obligations under the contract.

[59] Compl. ¶ 40.

discovery rather than at the pleadings stage."[60]  Similarly, "causation [is] a subject that does not lend itself to easy resolution at the pleadings stage."[61]

The Complaint alleges a constellation of facts that allow a reasonable inference the Company relied on Easterbrook's statements when deciding to terminate him without "cause."  It is alleged that Easterbrook lied to investigators regarding his prior sexual relationships with employees.[62]  As part of the investigation, Easterbrook turned over his company phone to be searched.  While this search revealed nothing, it later became evident that Easterbrook had deleted incriminating evidence from his phone.[63]  This active concealment makes it at least reasonably conceivable the Company had no way of knowing the full extent of Easterbrook's misconduct.

---

[60] *Forman v. CentrifyHealth, Inc.*, 2019 WL 1810947, at *12 (Del. Ch. Apr. 25, 2019); *see also Haney*, 2016 WL 769595, at *6 ("[T]he Court is unwilling, at least at this stage in the proceeding, to grant [a] Motion to Dismiss on reliance grounds" where defendant "allegedly actively concealed information."); *NACCO Indus., Inc. v. Applica Inc.*, 997 A.2d 1, 32 (Del. Ch. 2009) (noting that the line between reasonable and unreasonable reliance "is difficult to draw and is not something I will address on a motion to dismiss").

[61] *In re Massey Energy Co. Deriv. & Class Action Litig.*, 160 A.3d 484, 506 (Del. Ch. 2017); *see also In re Clovis Oncology, Inc. Deriv. Litig.*, 2019 WL 4850188, at *15 (Del. Ch. Oct. 1, 2019) (holding that "questions of causation are fact intensive and, as such, cannot be addressed at the pleading stage").

[62] Compl. ¶¶ 12–15, 21.

[63] Compl. ¶ 39.

Easterbrook argues McDonald's should have known and, in fact, did know about his indiscretions before it signed the Separation Agreement because the evidence of his sexual relationships with employees always resided on the Company's servers.[64] That evidence can be advanced at trial in support of an argument that McDonald's has not proven justifiable reliance, but that, of course, is not the question called by Easterbrook's Motion to Dismiss. The question for now is whether McDonald's has pled a reasonably conceivable basis to conclude that: (1) it was justified in relying upon the statements of its fiduciary–the Company's CEO and member of its Board–when that fiduciary assured the Board he had engaged in but one inappropriate relationship with an employee; and (2) it relied on those representations to its detriment.[65] McDonald's has pled ample facts to support both conclusions.

## III. CONCLUSION

For the foregoing reasons, the Motion to Dismiss is DENIED.

**IT IS SO ORDERED.**

---

[64] RB at 15 (referring to the Complaint where the Company alleges it discovered photographic evidence of Easterbrook's improper relationships on its servers after Easterbrook's termination was effective); *see* Compl. ¶ 39 ("Unbeknownst to Easterbrook, however, the deletion of the e-mails from mail applications on his Company-issued phone did not also trigger the deletion of those e-mails from his Company e-mail account stored on the Company's servers.").

[65] *See* Compl. ¶¶ 47–48; *Savor, Inc.,* 812 A.2d at 896–97.